**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Deborah D. Davis, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:18-cv-3342-TMC |
| v. | ) |
| | ) **ORDER** |
| New Penn Financial, LLC, d/b/a | ) |
| Shellpoint Mortgage Servicing, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Deborah D. Davis ("Plaintiff") originally brought this action in South Carolina state court against her former employer, Defendant New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing ("Defendant"), asserting causes of action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and South Carolina defamation law. (ECF No. 1-1).[1]  On December 11, 2018, Defendant removed the action to this court based on federal question jurisdiction.  (ECF No. 1).  In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a magistrate judge for pretrial handling.

On October 30, 2020, Defendant filed a motion for summary judgment.  (ECF No. 52).  Plaintiff was given additional time to respond and filed her opposition to Defendant's motion on December 18, 2020, (ECF No. 59), and Defendant replied (ECF No. 63).  The magistrate judge granted the parties leave to file sur-replies as well. (ECF Nos. 71; 72; 77).  Now before the court is the magistrate judge's Report and Recommendation ("Report"), entered May 25, 2021, recommending that the court grant Defendant's motion for summary judgment.  (ECF No. 81).

---

[1] Plaintiff also asserted claims under the Fair Labor Standards Act and the South Carolina Payment of Wages Act.  These claims, however, were dismissed pursuant to a stipulation of dismissal. (ECF No. 26).

Plaintiff filed objections to the Report, (ECF No. 82), and Defendant replied to Plaintiff's objections (ECF No. 83).  Accordingly, this matter is now ripe for review.  After carefully reviewing the record and the submissions of the parties, the court concludes a hearing is unnecessary to decide this matter.

## I. BACKGROUND

Upon review of the parties' briefing, the record, and the magistrate judge's Report, the court adopts the procedural history, factual background, and evidence as thoroughly set forth in the Report.  *See* (ECF No. 81 at 2–8).  Accordingly, the court will only briefly recount this background here.  Defendant manages residential mortgage loans.  Plaintiff was employed from June 20, 2016, to January 27, 2017, in Defendant's Foreclosure Litigation Department as a Litigation Foreclosure Specialist II.  In that capacity, Plaintiff managed the litigation timeline of uncontested foreclosures and served as custodian of business records to testify in foreclosure trials.  After she was hired, Plaintiff informed Defendant that she suffered a hearing disability; however, Plaintiff did not report or complain of discrimination on account of her disability while she was employed.  During her employment, Plaintiff received some performance-based reprimands.  For example, on August 11, 2016, Plaintiff received a written "Performance Coaching Form" from Kimberly Harmstad ("Harmstad"), her supervisor, touching on her failure to follow instructions and to communicate properly.  (ECF No. 52-3 at 9–12).  Plaintiff was also found to have violated company policies concerning timekeeping and desk security.  *Id*. at 18–23.

On January 16, 2017, Plaintiff notified Harmstad that her last day would be January 27, 2017, as she needed time to study for the South Carolina bar examination in February 2017.  Lindsey Wineguard ("Wineguard"), who worked in Defendant's Human Resources ("HR") Department, conducted an exit interview with Plaintiff and informed her that she was resigning

"in good standing" and that she would be "eligible to be re-hired in a year." (ECF No. 52-4 at 4). Wineguard also told Plaintiff that "exceptions are made depending on the need in that department." *Id*. These statements during the exit interview were consistent with Defendant's written re-hire policy which provides that "[i]f an associate leaves the company in good standing and is eligible for rehire, there is a one year wait period. Any variations to this policy are left to the discretion of executive management of the business line and of Human Resources." (ECF No. 52-2 at 13). This policy has been in place since at least 2012 and could be accessed by any employee who was logged onto Defendant's network. (ECF Nos. 52-2 at 1–2; 52-5 at 4, 7).

On March 6, 2017, having completed the South Carolina bar examination, Plaintiff applied to be re-hired by Defendant in several positions, including the Foreclosure Litigation Specialist II position from which she had resigned approximately six weeks earlier. Defendant did not re-hire Plaintiff in any capacity. None of the individuals ultimately hired to fill the positions for which Plaintiff applied had a hearing disability. Plaintiff then filed this action, alleging that Defendant refused to re-hire her because of her hearing disability, in violation of the ADA. (ECF No. 1-1 at 15).

## II. REPORT AND OBJECTIONS

The magistrate judge analyzed Plaintiff's ADA claim under the three-step, burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under this framework, if the plaintiff establishes a *prima facie* case of discrimination under the ADA, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See id.* at 802. The magistrate judge noted that if the employer meets this burden, the presumption created by the *prima facie* case disappears, leaving plaintiff to "prove by

a preponderance of the evidence that the defendant's articulated reason was a pretext for unlawful discrimination." (ECF No. 81 at 9).

Applying this framework to the instant facts, the magistrate judge concluded that Plaintiff failed to establish a *prima facie* case under the ADA for failure to rehire.[2]  *Id*. at 10–17. Specifically, the magistrate judge found that Plaintiff could not satisfy the requirement that she be qualified for the positions for which she applied because of Defendant's policy that former employees must wait one year before they are eligible to be re-hired.  *Id*. at 11.  The magistrate judge further found that Plaintiff failed to establish that Defendant's failure to re-hire her occurred under circumstances that give rise to an inference of discrimination, rejecting her contention that she satisfied this prong of her *prima facie* case with evidence that Defendant hired non-disabled people for the positions she was seeking: "the only evidence before the court is that the individuals hired for the positions [Plaintiff] sought were either new hires, an internal transfer, and a former employee who was rehired after a two-year hiatus (and therefore was not subject to the one-year rehire policy)."  *Id*. at 14.  Likewise, the magistrate judge rejected Plaintiff's attempt to establish her *prima facie* case via evidence that Harmstad, her supervisor, made comments reflecting a discriminatory animus based on Plaintiff's disability.  *Id*. at 15.  The magistrate judge determined that, even if Harmstad made such statements, there was no "competent evidence that Harmstad was involved in the consideration of Plaintiff's applications [to be re-hired.]"  *Id*. at 16.  Finally, despite having concluded Plaintiff failed to establish a *prima facie* case, the magistrate judge completed the burden-shifting analysis out of an abundance of caution.  *Id*. at 18–19.  Noting

---

[2] The magistrate judge noted that to establish a failure to rehire claim under the ADA, a plaintiff must prove that: "(1) she is within the ADA's protected class; (2) she applied for the position(s) in question; (3) she was qualified for the position(s); and (4) the defendant rejected her application under circumstances that give rise to an inference of discrimination."  *Id*. at 9 (citing *Hinson v. City of Columbia*, No. 3:12-01032-MBS, 2013 WL 5409140, at *5 (D.S.C. Sept. 24, 2013), *aff'd*, 564 F. App'x 11 (4th Cir. 2014)).

Defendant's legitimate, nondiscriminatory reason for not rehiring Plaintiff "is its one-year rehire policy," the magistrate judge considered whether Plaintiff had carried her burden to rebut Defendant's explanation with evidence that "discriminatory animus—not the one-year rehire policy—was the true reason for her not being rehired." *Id.* at 18. The magistrate judge found no merit in Plaintiff's argument that Defendant "'selectively and discriminatorily applied the policy against Plaintiff but not against other employees,'" *id.*, because Plaintiff failed "to provide evidence of similarly situated comparators who were rehired within one year of their post-resignation applications," *id.* at 13.

With respect to Plaintiff's defamation claim under state law, the magistrate judge also recommended that the court grant summary judgment in favor of Defendants on the basis that some of the alleged defamatory statements constituted mere opinion, *id.* at 24–25; some were barred by the statute of limitations, which precluded Plaintiff from seeking recourse based on any statements made prior to November 5, 2016, *id.* at 25; some lacked the requisite specificity to put Defendant on notice as to which statements it was to defendant against, *id.* at 26–28; and the rest did not constitute actionable defamation or were protected by a qualified privilege, *id.* at 29–36.

Plaintiff raises twelve discrete objections to the Report: (1) the Report erroneously looks in the light most favorable to the *moving* party as to the disputed reasons for why Defendant did not rehire Plaintiff; (2) the Report overlooks numerous disputes of material facts concerning the Defendant's "one-year rehire policy;" (3) the Report fails to credit the direct evidence of discrimination from Tracy Sirmans' testimony; (4) the Report's scope of comparators is too narrow; (5) the Report overlooks Kathy Davis, the known exception to the one-year provision; (6) the Report erroneously relies on *Furgess v. United Parcel Serv., Inc.*, No. 3:05-cv-1206-CMC, 2006 WL 3192542 (D.S.C. Nov. 1, 2006), *aff'd by* 220 Fed. App'x 186 (4th Cir. 2007); (7) the

Report fails to recognize a material and disputed fact regarding Plaintiff's reports of discrimination during her employment; (8) the Report fails to consider key facts concerning the "Performance Coaching Form" that, if considered, will provide important context to the Plaintiff's early reprimands; (9) statute of limitations only bars one alleged statement of defamation, but all other statements are not barred by the statute of limitations; (10) defamatory statements are defamation *per se* because they accuse Plaintiff of incompetence in her profession; (11) the Report's reliance on *Cain v. Providence Hosp., LLC*, No. 3:18-CV-2120-JFA-SVH, 2020 WL 1149724 (D.S.C. Mar. 10, 2020) is misplaced because Harmstad was responsible for initiating Plaintiff's performance-based coaching; and (12) the Report's reliance on *Todd v. S. State Bank*, No. 2:15-cv-0708-RMG, 2015 WL 6408121 (D.S.C. Oct. 22, 2016) creates a jury question regarding Defendant's actionable statements.  (ECF No. 82).[3]

### III. STANDARD OF REVIEW

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter.  *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)).  The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).  However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]"  *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017).

---

[3] Plaintiff asserts what purports to be a thirteenth "objection"—that if the Court does adopt the Report as it relates to the ADA cause of action, the Court should opt not to exercise supplemental jurisdiction over the state-law defamation claim.

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322– 23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## IV. DISCUSSION

### A. Plaintiff's objections regarding her ADA discrimination claim

Many of Plaintiff's objections to the Report merely summarize arguments previously presented to and rejected by the magistrate judge. In some instances, Plaintiff presents *verbatim* the same material presented in opposition to summary judgment, which essentially "mak[es] the initial reference to the magistrate useless" and "wastes judicial resources rather than saving them" in contravention to the purpose of the Federal Magistrates Act. *Kevin S. v. Comm'r for Soc. Sec.*

*Admin.*, No. 4:19-cv-20, 2021 WL 1207731, at *4 (W.D. Va. Mar. 30, 2021) (internal quotation marks omitted). It is well-settled in this Circuit that "an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object." *Jesse S. v. Saul*, No. 7:17-cv-00211, 2019 WL 3824253, at *1 (W.D. Va. Aug. 14, 2019); *see also, e.g.*, *Howard*, 408 F. Supp. 3d at 726 (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Nichols v. Colvin*, No. 2:14-cv-50, 2015 WL 1185894, at *8 (E.D. Va. Mar. 13, 2015) (finding that the rehashing of arguments raised to the magistrate judge does not comply with the requirement to file specific objections). Indeed, a district court "may reject perfunctory or rehashed objections to R&Rs that amount to a second opportunity to present the arguments already considered by the Magistrate Judge." *Heffner v. Berryhill*, No. 2:16-cv-820, 2017 WL 3887155, at *3 (D.S.C. Sept. 6, 2017) (internal quotation marks omitted). Moreover, objections that state nothing more than Plaintiff's "disagreement with [the] magistrate's suggested resolution," rather than specifically identifying any factual or legal error in the Report, are general objections that have the same effect as no objection at all. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Repetitive objections and general objections as to the magistrate judge's conclusions or recommended disposition are reviewed only for clear error and the court need not provide any explanation for adopting the magistrate judge's recommendations. *Camby*, 718 F.2d at 199–200; *Dunlap*, 288 F. Supp. 3d at 662. With these principles in mind, the court turns to consider Plaintiff's numerous objections.

### 1. The Report looks in the light most favorable to the moving party as to the disputed reasons for why Defendant did not rehire Plaintiff. (ECF No. 82 at 3–5).

Plaintiff argues, to the extent the court can summarize this objection, that she created a question of fact as to Defendant's legitimate, nondiscriminatory reason for not rehiring her. She

does so by pointing out that the record contained the following evidence: that for each position for which she applied—except the Specialist II position—she received a denial email indicating the only reason she was not rehired was the one-year rehire policy; that Plaintiff met every single qualification and requirement for the Specialist II position and that there is no documentation indicating Plaintiff is not qualified for the other positions; and that the individuals ultimately hired for the positions did not have a hearing disability. (ECF No. 82 at 3–4). Plaintiff then argues that, rather than recognizing this evidence created a question of fact, the Report "takes on the duties of the jury of weighing the evidence" by "adopting Defendant's arguments as the factual truth." *Id*. at 4. Plaintiff takes particular exception to the Report's reliance on the testimony of Defendant's HR Director Wilson that Defendant "'made the decision to not consider [Plaintiff's] applications for these positions, as [Defendant] did not have the business need and Plaintiff did not have the work record or skillset to warrant a departure from [Defendant]'s one-year rehire policy.'" *Id*. at 4–5 (quoting ECF No. 81 at 5).

This objection, in large part, repeats verbatim what was previously presented to the magistrate judge in Plaintiff's opposition to summary judgment. (ECF No. 59 at 5–77, 14). Therefore, the court reviews the portion of the Report in question only for clear error. Having carefully reviewed the Report, the court finds no clear error and overrules this objection. Furthermore, the extent that Plaintiff raises a specific and non-repetitive objection to the Report's conclusions "as to the disputed reasons . . . why Defendant did not rehire Plaintiff," the court concludes that Plaintiff has failed to create a question of material fact even when the evidence is viewed in a light most favorable to her. HR Director Wilson's testimony is consistent and not at all contrary to the record evidence including that highlighted by Plaintiff and no reasonable trier of fact could reach a contrary conclusion. Wilson testified that "there is a one-year period that you

must wait before you're eligible to be rehired" and that exceptions have been made "very, very rarely" on a "case by case basis" where there was a "business need" that required the re-hiring of an employee before one year or the employee possessed a "skill set" that was not otherwise available. (ECF No. 52-5 at 3–4). The written policy available on the company network provided that "[i]f an associate leaves the company in good standing and is eligible for rehire, there is a one year wait period. Any variations to this policy are left to the discretion of executive management of the business line and of Human Resources." (ECF No. 52-2 at 13). According to Director Wilson, Plaintiff was not re-hired because she was subject to the one-year waiting period and Defendant "did not have the business need and Plaintiff did not have the work record or skillset to warrant a departure from [Defendant]'s one-year rehire policy." *Id*. at 3–4. The fact that the positions for which Plaintiff applied were eventually filled by individuals without hearing disabilities—which Plaintiff highlights in her objection—does not alone create a question of fact as to pretext. As the magistrate judge pointed out, none of the individuals subsequently hired were similarly situated as they were not subject to the one-year policy: "[T]he individuals hired for the positions [Plaintiff] sought were either new hires, an internal transfer, and a former employee who was rehired after a two-year hiatus (and therefore was not subject to the one-year rehire policy." (ECF No. 81 at 14). Accordingly, the court overrules this objection.

**2.     The Report overlooks numerous disputes of material facts concerning the Defendant's "one-year rehire policy." (ECF No. 82 at 5–7).**

First, Plaintiff suggests that the application of the one-year policy was pretext because the Foreclosure Litigation Specialist II position for which she applied "had extremely high turnover rates" and "multiple vacancies." (ECF No. 82 at 5). As a result, Plaintiff claims, Defendant had a "clear business need" and would have made one of its rare exceptions to the one-year waiting period in Plaintiff's case except for the fact that she has a hearing disability. *Id*. This objection

repeats Plaintiff's argument to the magistrate judge that Defendant was selectively enforcing its own policies (ECF No. 59 at 17–18) and, therefore, the court reviews the relevant portion of the Report only for clear error. Plaintiff points to no evidence showing that a "high turnover" rate automatically created a "clear business need" such that the one-year policy was disregarded in order to fill the Foreclosure Litigation Specialist II position. Accordingly, the court perceives no clear error in the Report in this regard.[4]

Second, Plaintiff objects to the conclusion of the magistrate judge that Harmstad, the former supervisor who purportedly made discriminatory comments about Plaintiff, was not involved in the decision as to whether an exception to the one-year policy was warranted in Plaintiff's case. (ECF No. 82 at 5–6). Once again, this argument was presented to (ECF No. 59 at 15–16) and rejected by the magistrate judge:

> Plaintiff also attempts to establish her prima facie case based on various comments allegedly made by her former supervisor, Harmstad, which Plaintiff alleges indicate discriminatory animus. Plaintiff submits that, as her former supervisor, Harmstad was a decisionmaker concerning Plaintiff's applications for a Foreclosure Litigation Specialist II position. Pl. Mem. 15 (citing Wilson Dep. 34-35, 66-67). As an initial matter, the undersigned notes that the cited testimony concerns Wilson's responses to general questions regarding whether Harmstad would be consulted regarding the need for an exception of the rehire policy and whether she generally would be consulted as to hires for her team. Wilson did not testify that Harmstad had been involved in determining whether *Plaintiff* should be rehired. In fact, both Wilson and Harmstad state in their declarations that Harmstad did not have the authority to make an exception to the one-year rehire policy and was not consulted or involved with Plaintiff's applications for rehire. Wilson declared, "Ms. Harmstad was not involved in and was not consulted regarding [the decision not to consider Plaintiff for the positions for

---

[4] Plaintiff also asserts that, upon passing the bar exam, she dramatically enhanced her skillset such that a departure from the one-year rehiring bar would be warranted. (ECF No. 82 at 6). Plaintiff, however, fails to explain specifically how passing the bar exam would have equipped her with a relevant and hard-to-find skillset. This argument rests on Plaintiff's unsupported assumptions and, therefore, does not afford a basis for rejecting the magistrate judge's analysis or recommendations.

> which she applied]. My team did inform Ms. Harmstad that Ms.
> Davis had reapplied for a position with SMS, but only after all the
> positions for which Plaintiff applied had been filled." Wilson Decl.
> ¶ 12. *See* Harmstad Decl. ¶ 14, ECF No. 52-3 (indicating she was
> advised of Plaintiff's application after the position had been filled
> and was not consulted about whether Plaintiff's application
> warranted a departure from the one-year rehire policy). Disputes
> of fact are, of course, taken in Plaintiff's favor. In this instance,
> Wilson's general testimony regarding abstract procedure when
> someone applies or re-applies for a position is not sufficient to
> establish a factual issue as to whether Harmstad was involved in
> the decision not to rehire Plaintiff.

(ECF No. 81 at 15–16 (emphasis in original)). The court finds no clear error in the magistrate

judge's analysis and overrules this objection.

### 3. The Report fails to credit the direct evidence of discrimination from Tracy Sirmans' testimony. (ECF No. 82 at 7–9).

In large part, this objection repeats an argument already presented to (ECF No. 59 at 16)

and rejected by (ECF No. 81 at 16–17) the magistrate judge. Accordingly, the court applies a clear

error standard of review. The court finds no such error in the magistrate judge's consideration of

this testimony. Plaintiff presented testimony from Tracy Sirmans, a former co-worker of

Plaintiff's and a former employee of Defendant, who claimed that Harmstad stated "there was no

way that I would bring [Plaintiff] back into the department" and that "Plaintiff would use her

disability against [Defendant]." (ECF No. 82 at 8 (internal quotation marks omitted)). Plaintiff

argues now, as she did in opposition to Defendant's motion for summary judgment, that this

evidence reflects Harmstad's discriminatory animus and "bear[s] directly on the Defendant's

decision not to rehire." *Id.*; *see also* (ECF No. 59 at 15–16). The magistrate judge specifically

rejected this position, concluding that "Sirmans' general recollections and characterizations of

what Harmstad said, taken at face value, do not provide competent evidence that Harmstad was

involved in the consideration of Plaintiff's applications[,]" and noted that "[i]n her deposition

Sirmans specifically testified that she had no knowledge of the actual application process of who

was involved in considering Plaintiff's applications." (ECF No. 81 at 16). The court agrees with the magistrate judge's conclusion and, having found no clear error, overrules this objection.

**4. The Report's scope of comparators is too narrow. (ECF No. 82 at 9–10).**

In rejecting Plaintiff's argument that Defendant selectively applied the one-year policy as a pretext for discrimination based on Plaintiff's hearing disability, the magistrate judge concluded that Plaintiff failed "to provide evidence of similarly situated comparators who were rehired within one year of their post-resignation applications." (ECF No. 81 at 13). The magistrate judge determined that Plaintiff's preferred group of comparators—consisting of the individuals who were hired for the positions sought by Plaintiff—was too broad as none of them were former employees subject to the one-year rehire policy. *Id*. at 14 ("In fact, the only similarity between the identified comparators and Plaintiff was that they applied for the same positions. Plaintiff did not and cannot identify any other similarities.").

Plaintiff recycles this argument in objecting to the Report, again ignoring the crucial issue for comparison in this case—whether the individuals hired by Defendant were subject to the one-year policy. (ECF No. 82 at 9). For the reasons stated in the Report, the court agrees with the magistrate judge that Plaintiff failed to identify any similarly situated comparators. This objection is overruled.

**5. The Report overlooks Kathy Davis, the known exception to the one-year provision. (ECF No. 82 at 10).**

Plaintiff next claims that the magistrate judge overlooked evidence of pretext showing that Defendant made an exception to the one-year rule for Kathy Davis, an employee who Plaintiff believes was similarly situated except for the hearing disability. (ECF No. 82 at 10). The evidence in question included Plaintiff's own vague testimony that it was her understanding that Kathy Davis "resign[ed] from [Defendant] and was rehired within a year into the bankruptcy

department." (ECF No. 59-1 at 73). Plaintiff was unable to testify when Kathy Davis left or when she returned, nor could she provide any other details about Kathy Davis's employment. *Id*. at 71–73. To the extent that Plaintiff cites the testimony of Defendant's HR Director Wilson in support of this objection, Ms. Wilson's testimony is hardly helpful. As the magistrate judge observed, "Wilson testified only that an employee named Kathy Davis had moved from foreclosure to bankruptcy, and back to foreclosure," that "she was unsure of the times of those changes," and that "she was unsure whether Kathy Davis's position changes were related to her need for certain educational-related scheduling." (ECF No. 81 at 13). Furthermore, Wilson classified Kathy Davis as an "internal move" from one position to another within the company, not a "rehire." (ECF No. 52-5 at 3). The one-year policy applied to employees who "leave[] the company" altogether. (ECF No. 52-2 at 13). Accordingly, the court agrees with the magistrate judge's conclusion that, even construed in the light most favorable to Plaintiff, the evidence would not permit a reasonable finder of fact to conclude that "exceptions were made for Kathy Davis (or any non-disabled person) under circumstances similar to [Plaintiff's circumstances]." (ECF No. 81 at 13). The court overrules this objection as well.

### 6. *Furgess* is distinguishable from the present facts. (ECF No. 82 at 10–11).

Plaintiff next argues that *Furgess*, which the magistrate judge cited in the Report (ECF No. 81 at 10), does not support the magistrate judge's conclusions and recommendations, (ECF No. 82 at No. 10). In discussing whether Plaintiff had established her *prima facie* case, the magistrate judge cited *Furgess* to show that, "in the Title VII failure-to-rehire context," summary judgment was justified where a plaintiff was subject to the "employer's policy against rehiring certain individuals" and, as a result, was unable to satisfy the "qualified-for-position prong" of a prima facie case of discrimination. (ECF No. 81 at 10–11).

In her objections, Plaintiffs contends that "*Furgess* is distinguishable on the grounds that, unlike *Furgess*, similarly situated individuals were rehired by Defendant notwithstanding the one-year provision." (ECF No. 82 at 10). As set forth above, however, the court has found that the magistrate judge correctly concluded that Plaintiff failed to identify any similarly situated comparators. For those same reasons, the court concludes that this objection is not well-taken and provides no basis for rejecting the recommendation of the magistrate judge. Therefore, the court overrules this objection.

### 7. The Report fails to recognize a material and disputed fact regarding Plaintiff's reports of discrimination during her employment. (ECF No. 82 at 11–14).

This objection repeats the arguments raised in Plaintiff's second objection. *Compare id*. at 5–7, *with id*. at 11–14. In sum, Plaintiff contends that the magistrate judge ignored evidence that was sufficient for a reasonable jury to conclude that Defendant's discriminatory animus, not its one-year policy, was the real reason she was not rehired. Such evidence, according to Plaintiff, consisted of testimony from former co-workers about statements purportedly made by Harmstad denigrating Plaintiff because of her disability; evidence that Harmstad denied Plaintiff's accommodation request for a headset; and Plaintiff's testimony that Harmstad denied her some opportunities that non-disabled coworkers in her position were given. *Id*. at 11–14. As previously discussed, however, the court finds no clear error in the magistrate judge's conclusion that there was no dispute of fact as to whether Harmstad was involved in the decision to rehire Plaintiff or apply the one-year policy. Plaintiff points to nothing in this objection to undermine that conclusion. Accordingly, the court overrules this objection as well.

### 8. The Report failed to properly consider the "Performance Coaching Form" as evidence of discriminatory animus. (ECF No. 82 at 14–21).

Finally, like Plaintiff's other objections regarding the magistrate judge's consideration of discriminatory animus evidence, this one fails for the same reasons—Plaintiff has failed to create

a question of fact regarding Harmstad's involvement in the decision not to rehire Plaintiff. Accordingly, the court overrules this objection.

Thus, having overruled all Plaintiff's objections and finding no clear error in the magistrate judge's analysis or conclusions as to Plaintiff's ADA discrimination claim, the court agrees with and adopts the Report's recommendation that summary judgment be granted in favor of Defendant as to such claim.

### B. Plaintiff's objections relating to her state defamation claim

### 1. Supplemental Jurisdiction

Before addressing Plaintiff's objections, the court considers Plaintiff's suggestion that if the court grants summary judgment as to her federal claim, it remand the remaining state law claim to state court under 28 U.S.C. § 1367(c). (ECF No. 82 at 20). Plaintiff's complaint was originally filed in South Carolina state court, asserting both federal and state law claims, and was removed to this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(a). *See* (ECF No. 1). The only remaining cause of action arises under South Carolina law and is purely a state-law claim. *See* (ECF No. 1-1 at 17–19). "[U]nder the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has the inherent power to dismiss [a] case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001); *see also Moore v. Sears Roebuck & Co.*, No. 3:06cv255-RV/MD, 2007 WL 1950405, at *10 (N.D. Fla. July 2, 2007) (quoting *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002)) ("'A court may decline to exercise jurisdiction over state-law claims, where the Court has dismissed all the federal claims over which it has original jurisdiction.'"). A district court "may decline to exercise

supplemental jurisdiction over a claim" if the "court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id*.

As noted above, Defendant is entitled to summary judgment on Plaintiff's federal cause of action under the ADA and, consequently, the state-law defamation claim necessarily predominates because it is the only remaining cause of action. However, Defendant contends that principles of fairness and judicial economy would make remand unfair as the parties have spent considerable time litigating this matter in federal court, discovery has been completed and dispositive motions filed, and that a remand to state court would extend this litigation well into the future. (ECF No. 85 at 22).

This court has previously exercised its discretion to remand state law claims under § 1367(c)(3) even where discovery had been completed and dispositive were pending, concluding that "[i]t will not inconvenience the parties to litigate the remaining state claims in state court" and that "[t]here is also no reason for this court to retain jurisdiction over state law claims which the state court is more suited to hear." *Flowers v. South Carolina*, No. 8:15-cv-706-TMC, 2015 WL 6903581, at *2 (D.S.C. Nov. 9, 2015). In this case, however, the court concludes that judicial economy and fairness require the court to continue exercising supplemental jurisdiction over the state law claim. In particular, it is unclear from the record whether, if the pending state law claim was refiled in state court, the action would still be removable to federal court based on diversity jurisdiction. Moreover, the present action has been pending for a substantially longer period of

time than the action in *Flowers*. Plaintiff's request for remand is cursory and sets forth no reasons for the court to do so. Accordingly, the court will address Plaintiff's remaining objections as to her defamation cause of action.

### 2. The statute of limitations only bars one alleged statement of defamation. All other statements are not barred by the statute of limitations. (ECF No. 82 at 15).

The magistrate judge concluded that because Plaintiff filed her complaint on November 5, 2018, South Carolina's two-year statute of limitations for defamation actions, *see* S.C. Code Ann. § 15-3-550, bars Plaintiff from seeking relief based on any defamatory comments alleged to have been made prior to November 5, 2016. (ECF No. 81 at 25). The magistrate judge also concluded that numerous other alleged defamatory remarks identified by Plaintiff in opposition to summary judgment, *see* (ECF No. 59 at 30–31), lacked sufficient specificity for the court to determine when they were made and, therefore, were time-barred as well. (ECF No. 81 at 26–29). These time-barred statements included the following: (1) that Harmstad "spoke disparagingly of [Plaintiff] . . . so frequently that the dates were too numerous to count"; (2) that Harmstad, "[e]very time Plaintiff went to lunch or was out for the day would openly discuss all of the terrible things Ms. Davis did and said[,] and constantly said Plaintiff was crazy, a lunatic, and off her rocker, and so forth"; (3) that Harmstad "disparaged [Plaintiff] so often when she worked [for Defendant]" that "Sirmans and coworkers just put in earplugs to listen to music because they were tired of Harmstad's complaining about her staff"; and (4) that Harmstad "was still dragging [Plaintiff's] name through the mud although Plaintiff had not worked [for Defendant] for months." *Id*. at 26–27 (internal quotation marks omitted); *see also* (ECF No. 59 at 30–31).

In her objections, Plaintiff concedes that any defamatory statements prior to November 5, 2018 are barred by the statute of limitations. (ECF No. 82 at 15). However, Plaintiff suggests that the only statement made prior to that date was Harmstad's alleged statement concerning Plaintiff's

use of "the disability card." *Id*. Plaintiff does not, however, specifically object to the magistrate judge's conclusion that the statements identified in the Report lacked specificity and, therefore, were barred by the statute of limitations. Accordingly, the court reviews that portion of the Report for clear error. Finding no such error, the court overrules this objection.

### 3. The defamatory statements found in the Report to lack sufficient detail are still actionable because they constitute defamation *per se*. (ECF No. 82 at 15–16).

Separate and apart from the conclusion that the statute of limitations barred certain statements, the magistrate judge concluded that numerous other alleged defamatory remarks[5] were so lacking in detail that they did "not permit the court to determine whether the alleged remarks were (a) of a potentially defamatory nature; (b) made after November 5, 2016 (so as to be timely); or (c) were made to persons to permit the court to determine whether nonprivileged publication took place." (ECF No. 81 at 28). Accordingly, the magistrate judge determined that these alleged defamatory statements did not constitute actionable defamation. *Id*.

Plaintiff objects to this portion of the Report on the basis that these statements constitute defamation *per se* because they suggest Plaintiff is unfit for her profession. (ECF No. 82 at 15). Under South Carolina law, "[s]lander is *actionable* per se when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) *unfitness in one's business or profession*." *McBride v. Sch. Dist. of Greenville Cty*., 698 S.E.2d 845, 852 (S.C. Ct. App. 2010) (emphasis added) (internal quotation marks omitted). "When the statement is classified as actionable per se, the defendant is presumed to have acted with common law malice, and the plaintiff is presumed to have suffered general damages." *Id*. (internal quotation

---

[5] These statements are catalogued on pages 27 and 28 of the Report, (ECF No. 81 at 27–28), and identified in Plaintiff's memorandum in opposition to summary judgment on pages 9 and 10, (ECF No. 59 at 9–10).

marks omitted).  The effect of classifying a defamatory statement as actionable *per se* is to relieve

the plaintiff of the burden of "plead[ing] and prov[ing] both common law malice and special

damages."  *Id*. (internal quotation marks omitted).  According, as noted by Defendant in its reply,

"[t]he actionable *per se* determination is relevant to the damages prong of a defamation claim" and

not "whether a statement constitutes actionable defamation" in the first instance.  (ECF No. 85 at

15).  This objection misses the crux of the magistrate judge's specificity analysis, and the court

finds it to lack merit.  This objection is overruled.

**4. Plaintiff's objections with respect to pages 29–36 of the Report regarding statements constituting opinion or hyperbole or protected by qualified privilege**

The magistrate judge considered the following alleged defamatory statements that she had

not already determined to be time-barred or to lack sufficient specificity:

> 4. "[Harmstad said] 'She's crazy if she thinks she's going to come back here and work with me.'"**(numbered statement 4).**
>
> 5. "It had been in no uncertain terms that she [Harmstad] was saying that what Ms. Davis had done was wrong." **(numbered statement 5).**
>
> 6. "It was ridicule and disbelief that Ms. Davis could think that she could ever come back and work in that position under her ever again." **(numbered statement 6).** . . .
>
> 9. "My concern was built upon the concerns that Kim Harmstad consistently drilled into our team's head, that when we trained with Charlene, Charlene would say the same thing: Anything that Deborah did or instructed you on, do not listen to because it most likely is incorrect. Kim said that if she works on any of your files to make sure you look over everything because most likely it's not done correctly." **(numbered statement 9).**
>
> 12. "[Harmstad said] 'Guess who passed the bar? Nobody will ever be going to her.'" **(numbered statement 12).**
>
> 14. "Harmstad got on the phone with our main contact [at outside attorney Kelly Kronenberg's office] . . . and said, you know, that everything that Deborah had said or done during her employment with Shellpoint was to be discarded, disregarded, and not taken into

consideration from that point forward, that she incorrect, that she was wrong." **(numbered statement 14).**

17. "[Harmstad said of Plaintiff] that she would have to go into her own practice because nobody would hire her because she is a lunatic[.]" **(numbered statement 17).**

21. "Ms. Harmstad apprised everyone in the Foreclosure Department that Ms. Harmstad had no choice at that point but to keep Ms. Davis now, not only because Ms. Jones said so, but because Ms. Davis was 'playing up' the deaf disability." **(numbered statement 21).**

25. Each time after Ms. Davis applied for her old position on or around March 6, 2017, May 1, 2017, and June 6, 2017, Ms. Harmstad would complain about Ms. Davis again and drag Ms. Davis's name through the mud. Ms. Harmstad referred to Ms. Davis' disability, and claimed that Ms. Davis would use her disability against Shellpoint. Ms. Harmstad admitted "there was no way that I would bring her back into the department." It was implied by Ms. Harmstad's conduct that Ms. Harmstad would not re-hire Ms. Davis because of Ms. Davis's disability, especially with the number of times Ms. Harmstad disparaged Ms. Davis because of Ms. Davis's hearing disability. **(numbered statement 25).**

(ECF No. 81 at 29–30 (citing ECF Nos. 59-4 at 35, 46, 50; 59-11 at 44, 129, 142, 204) (internal citations omitted) (emphasis added)).

The magistrate judge first determined that these statements were not "susceptible of having a defamatory meaning." *Id*. at 31. The magistrate judge concluded that some of Harmstad's alleged statements—for example, that "nobody would hire her because she is a lunatic"—constituted hyperbole "not based on ascertainable facts that could be shown to be true or false," while others were mere expressions of opinion—for example, that "if [Plaintiff] works on any of your files to make sure you look over everything because most likely it's not done correctly." *Id*.[6]

---

[6] Specifically, the magistrate judge identified numbered statements 12, 17, 21, and 25 as statements of opinion, laced with hyperbole and numbered statements 5, 6, 9, 14, 21, and 25 as statements that Harmstad believed to be true based on her opinion. (ECF No. 81 at 31).

The magistrate judge then determined that, to the extent Harmstad's alleged statements related to the plaintiff's work product, they were subject to a qualified privilege and, therefore, were not defamatory as a matter of law. *Id*. at 33–36. The magistrate judge explained that, because "Harmstad was Plaintiff's supervisor and had a business need to analyze and critique her work performance . . . to others who worked in the same department or to someone at a law firm who worked with the department," her alleged statements to Plaintiff's co-workers that her work "had been 'wrong' or 'incorrect'" were covered by the qualified privilege. *Id*. at 34–35.

Accordingly, the magistrate judge recommended that Defendant's motion for summary judgment be granted as to the defamation cause of action, having found that "[t]he allegedly defamatory facts are either true, nonspecific, protected opinion/hyperbole, or protected by the non-waived qualified privilege relating to work performance." *Id*. at 35–36.

> a. (Objections 10.1 and 10.2) Objections to the Report's privilege determination. (ECF No. 82 at 16–18).

Plaintiff objects on the basis that Harmstad's alleged defamatory statements were not privileged because they (1) "cannot be said to have been made in good faith based on their frequency, their timing, and their subject matter[,]" and (2) "served no business purpose." (ECF No. 82 at 17 (citations omitted)). To show a question of fact exists, Plaintiff points to Sirmans' testimony that "Harmstad would openly discuss all of the terrible things [Plaintiff] did and said[,]" called Plaintiff "'crazy', a lunatic, and off her rocker," and "spoke disparagingly of [Plaintiff] to the point that [it] occurred so frequently in [Plaintiff's] absence that the dates were too numerous to count for me to recall every single time such behavior occurred." (ECF Nos. 52-12 at 6, 8; 59 at 10). Plaintiff further argues that even if the privilege did apply, Harmstad's statements in front of her co-workers exceeded the scope of the privilege because her co-workers "did not have an interest in a supervisor's characterization of her performance." (ECF No. 82 at 18).

Plaintiff's objections essentially rehash the arguments made to and rejected by the magistrate judge. (ECF No. 59 at 25). Plaintiff is not permitted a second bite at the apple; accordingly, the court considers these objections under the clear error standard. *See Ray J. v. Saul*, No. 5:20-cv-1835-BHH, 2021 WL 2644318, at *3 (D.S.C. June 28, 2021). After carefully reviewing the magistrate judge's detailed and thorough analysis, the court finds no clear error. The record evidence highlighted by Plaintiff in this objection consists of vague or hyperbolic statements that did not relate to Plaintiff's work performance and were, therefore, not even covered by the magistrate judge's qualified privilege determination. Furthermore, even if the court concluded it could not sustain the qualified privilege analysis set forth in this portion of the Report, the court would nevertheless adopt this section of the Report (ECF No. 81 at 29–36) based on the magistrate judge's conclusion—to which Plaintiff does not object—that the alleged statements at issue are "either too vague or protected hyperbole or opinion," *id*. at 35. Accordingly, the court rejects this objection.

> b. (objections 11 and 12) The Report erroneously cites and relies upon Cain and Todd. (ECF No. 82 at 19–20).

The magistrate judge cited *Cain v. Providence Hosp., LLC*, No. 3:18-cv-2120-JFA-SVH, 2020 WL 1149724, at *8 (D.S.C. Mar. 10, 2020), for the general proposition that "insinuations that plaintiff was not doing her job properly were not actionable defamation when plaintiff was disciplined for not doing her job properly." (ECF No. 81 at 31). The magistrate judge cited *Cain* in passing to support her conclusion that, to the extent Harmstad stated Plaintiff did a poor job, her comments were not defamatory in light of the reprimands and performance-based coaching Harmstad gave to Plaintiff during her employment. *See id*. The court agrees with the magistrate judge that *Cain* is generally relevant and finds that its inclusion in the Report did not constitute an error.

Plaintiff likewise objects to the magistrate judge's single citation cross-referencing *Todd v. S. State Bank*, No. 2:15-cv-0708-RMG, 2015 WL 6408121, at *3 (D.S.C. Oct. 22, 2016), for the proposition that hyperbolic statements indicating a plaintiff was fired because she was "'crazy,' 'unstable,' and 'out of control'" did not constitute defamation *per se*. (ECF No. 81 at 31–32). Plaintiff argues that *Todd* still allows that such statements could constitute defamation *per quod*— that is, a jury could infer from circumstances surrounding the statements that there was a defamatory meaning behind the words. (ECF No. 82 at 19–20); *Todd*, 2015 WL 6408121, at *8 (denying motion to dismiss and explaining that "[w]hile the terms 'crazy, unstable and out of control' may not, on their face, be considered defamatory . . . these terms are alleged here to have been used in the context of being *the reason* that Plaintiff had to be fired from her job"). Thus, Plaintiff suggests that *Todd* actually supports her position that a question of material fact exists that would preclude summary judgment. Unlike *Todd*, however, this matter is before the court on a motion for summary judgment, rather than a motion to dismiss. As Defendant points out, "Plaintiff has failed to provide any extrinsic facts with regard to the context of these statements and fails to adequately respond to Defendant's contention that these statements lack the required level of specificity." (ECF No. 85 at 20–21).

## V. CONCLUSION

For the reasons set forth above, the court adopts the Report, incorporates its findings and conclusions herein, and accepts the recommendation of the magistrate judge that Defendant's motion for summary judgment be granted. Accordingly, the court **GRANTS** Defendant's motion for summary judgment (ECF No. 52).

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

July 22, 2021
Anderson, South Carolina